IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE: JOHN D. WHEELER                          CHAPTER 7

DEBTOR                                          CASE NO: 11-14861-DWH

SECURED CREDITORS: DeSOTO COUNTY TAX COLLECTOR; CITIZENS
NATIONAL BANK

JUDGMENT CREDITORS: BANCORPSOUTH BANK; H.W. JENKINS LUMBER
CO.; HERNANDO LUMBER AND MILLWORKS

EXECUTORY CONTRACT BENEFICIARIES: JERRY AND TERRY GOWAN;
WHEELER HOMES LLC


MOTION SEEKING ORDER TO TRUSTEE  TO ASSUME EXECUTORY
CONTRACTS AND TO JOIN IN SALE OF PROPERTY
FREE AND CLEAR OF LIENS AND ALLEGED LIENS
PURSUANT TO BANKRUPTCY CODE §§ 105 AND 363

The application of John D. Wheeler, Debtor by his attorney, Frank M. Hurdle,

shows:

JURISDICTION

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C.

§§ 157 and 1334.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409.

3. The bases for the relief requested herein are, inter alia, 11 U.S.C. §363

and Federal Rules of Bankruptcy Procedure 2002 and 6004.

4. This matter is a core proceeding.

5. On October 20, 2011, Debtor commenced a case under Chapter 7 of the

Bankruptcy Code and was continued in possession of his property.

6. Debtor is the owner of real property known and described as Lot 320 Fairway Point, Hernando, MS. Upon information and belief the Property has a value in excess of $170,000 in its present condition; however the property is in need of repairs.          .

7. The DeSoto County Tax Collector has a lien against the property for ad valorum taxes of approximately $1,849.77, representing current year's taxes and the amount needed to redeem the property from previous tax sales..

8. Citizens National Bank holds a first deed of trust on the Property securing a note in the approximate principal amount of $148,357.59. A copy of this deed of trust is attached and labeled "Exhibit A."

9. In addition to the above mortgage and tax liens, the following default judgments have been enrolled against debtor and are a lien on the property. As these are default judgments they are subject to dispute:

- Judgment lien in favor of BancorpSouth Bank in the amount of $136.345.33 enrolled on February 25, 2011.

- Judgment lien in favor of BancorpSouth Bank in the amount of $19,413.92 enrolled on February 25, 2011.

- Judgment lien in favor of H.W. Jenkins Company in the amount of $178,948.51 enrolled on May 17, 2011.

- Judgment lien in favor of Hernando Lumber and Millwork in the amount of $26,392.72 enrolled on May 4, 2011.

10.    Debtor has entered into an executory contract for the sale of Lot 320 Fairway Cove, Hernando, Mississippi, to Jerry and Terry Gowan for the sale of this tract for the sum of $187,900. This contract of sale was made by debtor prior to filing for bankruptcy protection and was made pursuant to an offer of purchase made

through buyers' broker, Bob Leigh and Associates. This contract is attached and labeled "Exhibit B." The terms include the following:

- Seller to pay 3.5 percent of cost of home towards closing and other costs;

- Property to close by November 18, 2011 (this closing date has been extended to Dec . 2, 2011);

- Contract contingent on purchaser's closing and sale of current home;

- Seller to make general repairs necessary to put home in "new" condition, with holes patched and painted and squeaking subfloor repaired;

- Seller to build a covered patio 13.5 feet deep by 19 feet wide with brick columns and shingle roof to match house, to include ceiling fan, light, and gutters;

- A broker's real estate commission of 6 percent must be paid.

11. To facilitate this sale, Wheeler Homes LLC entered into a contract with Debtor contemporaneously with the contract for purchase and sale. A copy of this contract is attached and labeled "Exhibit C." The basic terms of this contract are:

- Wheeler Homes LLC is to perform all work agreed to by Debtor in the contract for the purchase and sale of real estate;

- Wheeler Homes LLC will provide purchasers with an HBW-210 home warranty covering all construction of house at closing, said warranty to be listed on the settlement statement and paid for out of closing proceeds;

- For performing necessary repairs Wheeler Homes is to be paid its actual direct costs of repairs plus 15 percent of said itemized costs to cover

indirect costs, overhead, supervision, and labor.[1] These repairs are to be listed on the settlement statement and paid out of closing proceeds.

12. Wheeler Homes LLC is owned by Carmen Wheeler, wife of Debtor.

13. Although Debtor may, by virtue of his marriage to Carmen Wheeler receive some incidental benefit from the contract to repair the property, on information and belief this contract has no present value and had no value at the time this bankruptcy was filed. Any future value, should there be any at all, will only accrue as Wheeler Homes LLC actually performs the contract.

14. On information and belief, the sales price of $187,900 represents the highest price Debtor will be able to receive for the home in the immediate future.

15. Debtor proposes that the Trustee be ordered join Debtor in the sale of the property for $187,900, with the proceeds to be distributed as follows:

a. Citizens National Bank is to be paid approximately $148,357.59 in satisfaction of its mortgage.

b. Taxes are to be prorated for the current year and the real estate is to be redeemed from prior tax sales, with an estimated tax liability of $1,849.77.

c. All customary legal and closing costs, a six percent sales commission, and the cost of an HBW-201 Home Warranty to be provided by Wheeler Homes LLC are to appear on the closing statement and be paid.

d. Wheeler Homes LLC is to provide an itemized and documented list of expenses incurred in the repair and construction on the home and is to be repaid for

---

[1] The subject property has been used as a rental property, therefore there are numerous small repairs which need to be made to bring the property to "like new" condition.

these expenses plus an additional 15 percent of total itemized costs to cover indirect costs, overhead, supervision, and labor, subject to approval of Chapter 7 Trustee Alex B. Gates.

e. Any remaining funds are to be paid to Alex B. Gates, Chapter 7 Trustee, for distribution to judgment or other creditors pursuant to the provisions of the bankruptcy code, with judgment creditors having a lien on the remaining proceeds of sale.

16. Debtor further proposes that the property be conveyed free and clear of all liens and encumbrances pursuant to Section 363(f) of the Bankruptcy Code.

17. As Debtor has brought this motion for the benefit of secured creditors, Debtor proposes that a legal fee of $500 be paid to his attorney for legal expenses.

WHEREFORE, PREMISES CONSIDERED, Debtor prays for the following relief:

A. That the Court order the Trustee to accept the executory contract between Debtor and Jerry and Terry Gowan;

B. That the Court order the Trustee to accept the executory contract between Debtor and Wheeler Homes, LLC;

C. That the Court order the Trustee to join with Debtor in the sale of Lot 320 Fairway Point, Hernando, MS to Jerry and Terry Gowan;

D. That proceeds from said sale are to be distributed as follows:

1. Citizens National Bank is to be paid approximately $148,357.59 or such sums as are necessary in satisfaction of its mortgage.

2. Taxes are to be prorated for the current year and the real estate is to be redeemed from prior tax sales, with an estimated tax liability of $1,849.77.

3. All customary legal and closing costs, a six percent sales commission, and the cost of an HBW-201 Home Warranty to be provided by Wheeler Homes LLC are to appear on the closing statement and be paid, as well as a legal fee to Debtor's attorney of $500.

4. Wheeler Homes LLC is to provide an itemized and documented list of expenses incurred in the repair and construction on the home and is to be repaid for these expenses plus an additional 15 percent of total itemized costs to cover indirect costs, overhead, supervision, and labor, subject to approval of Chapter 7 Trustee Alex B. Gates, said approval not to be withheld without evidence of fraud or abuse.

5. All remaining funds are to be paid to Chapter 7 Trustee Alex B. Gates for distribution to judgment and other creditors pursuant to the provisions of the Bankruptcy Code, with any rights of judgment creditors to attach to the proceeds of such sale in order of priority and pursuant to law.

E. That the 10-day stay provided by Bankruptcy Rule 4001(a)(3) be waived.

F. Debtor seeks all additional relief.

Respectfully submitted, this the 10th day of November, 2011.

 s/**Frank M. Hurdle**
Frank M. Hurdle, attorney for Debtor
P.O. Box 2777
Oxford, MS 38655
662-236-3700
MSB#9709

## CERTIFICATE OF SERVICE

I, Frank M. Hurdle, Attorney for Debtor, do hereby certify that I have this day mailed, via electronic delivery or postage prepaid, a true and correct copy of the above and foregoing Motion To Avoid Lien to:

Hon. Alex B. Gates, trustee
P. O. Box 216
Sumner, MS 38957

U. S. Trustee
501 East Court Street, Suite 6-430
Jackson, MS 39201

Citizens National Bank
6296 Airways Blvd
Southaven, MS 38671

BancorpSouth Bank
2910 West Jackson St
Tupelo, Ms 38801

H.W. Jenkins Company
4155 Pidgeon Roost Road
Memphis, TN 38118-6900

Hernando Lumber & Millwork
225 E. Center Street
Hernando, MS 38632

Jerry and Terry Gowan
c/o Bob Leigh and Assoc.
6900 Cobblestone Blvd.
Southaven, MS 38672

Wheeler Homes LLC
P.O. Box 150
Southaven, MS 38671

DeSoto County Tax Collector
365 Losher St # 110
Hernando, MS 38632-2189

This the 10th day of November, 2011.

 s/Frank M. Hurdle
Frank M. Hurdle

*10/29/09 8:57:05
DK T BK 3,095 PG 737
DESOTO COUNTY, MS
W.E. DAVIS, CH CLERK*

# Exhibit A

**RECORDATION REQUESTED BY:**
THE CITIZENS NATIONAL BANK OF MERIDIAN, Olive Branch Banking Centre, PO Box 1516, 7280 Hacks Cross Rd, Olive Branch, MS 38654

**WHEN RECORDED MAIL TO:**
The Citizens National Bank of Meridian, PO Box 5188, Meridian, MS 39302

**SEND TAX NOTICES TO:**
John D. Wheeler, P. O. Box 150, Southaven, MS 38671

_____
FOR RECORDER'S USE ONLY

~~PREPARED BY~~ RETURN TO:
**AUSTIN LAW FIRM, P.A.**
ATTORNEYS AT LAW
6928 COBBLESTONE DRIVE, SUITE 100
SOUTHAVEN, MS. 38672
662-890-7575
S10.09-0595

This Deed of Trust prepared by:
Diane Fairbanks
THE CITIZENS NATIONAL BANK OF MERIDIAN
PO BOX 5188
MERIDIAN, MS 39302
(601) 696-2837

INDEXING INSTRUCTIONS: Lot 320, Fairway Pointe, S-6, T-3-S, R-7-W, DeSoto County, MS.



# ◆ Citizens National Bank

## DEED OF TRUST

This Deed of Trust secures a line of credit as defined in Miss. Code Ann. Section 89-1-49 and shall not be extinguished until the conditions of Miss. Code Ann. Section 89-5-21 are met.

**THIS DEED OF TRUST** is dated October 27, 2009, among John D. Wheeler, whose address is PO Box 150, Southaven, MS 38671 ("Grantor"); THE CITIZENS NATIONAL BANK OF MERIDIAN, whose address is Olive Branch Banking Centre, PO Box 1516, 7280 Hacks Cross Rd, Olive Branch, MS 38654 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and Don O. Rogers, III, whose address is 512 22nd Avenue, Meridian, MS 39301 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Grantor conveys to Trustee for the benefit of Lender as Beneficiary all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property")** located in DeSoto County, State of Mississippi:

> See Exhibit "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 921 Fairway Pointe Cove, Hernando, MS 38632.

Grantor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Grantor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Grantor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

DK T BK 3,095 PG 738

# DEED OF TRUST
## (Continued)

Loan No: 21005017904

Page 2

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Mississippi law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may

# DEED OF TRUST
## (Continued)

Loan No: 21005017904

Page 3

request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Grantor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Trustee or Lender under this Deed of Trust, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this

**DEED OF TRUST**
**(Continued)**

event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Deed of Trust in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Deed of Trust as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Grantor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Any reconveyance fee required by law shall be paid by Grantor, if permitted by applicable law.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Grantor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole

# DEED OF TRUST
## (Continued)

discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Deed of Trust, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**Sale of Property.** Grantor waives the provisions of Section 89-1-55, Mississippi Code of 1972, as amended, and any successor provisions, as far as said Section restricts the right of Trustee to offer at sale more than one hundred and sixty acres at a time, and Trustee may offer the Property as a whole or in part and in such order as the Trustee may deem best, regardless of the manner in which it may be described.

**Foreclosure.** With respect to all or any part of the Real Property, the Trustee shall, at the request of Lender, sell the Real Property after giving notice of the time, place and terms of sale as required by Section 89-1-55 of the Mississippi Code of 1972, as amended, and any successor provisions, and execute a deed to the purchaser of the Real Property. Out of the proceeds arising from the sale, the costs and expenses of executing this Deed of Trust, including a reasonable Trustee's fee and the attorneys' fees prescribed in the Note or in this Deed of Trust, shall first be paid; next the amount of the Indebtedness then remaining unpaid shall be paid; and, lastly, any balance remaining shall be paid to Grantor or to Grantor's representatives agents or assigns.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Grantor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Grantor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of DeSoto County, State of Mississippi. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Grantor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its

**DEED OF TRUST**
**(Continued)**

Loan No: 21005017904

Page 6

successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**NOTICES.** Any notice required to be given under this Deed of Trust, including without limitation any notice of default and any notice of sale must be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**CROSS-COLLATERALIZATION.** This Deed of Trust shall also secure all future and additional advances which Lender may make to Borrower from time to time upon the security herein conveyed. Such advances shall be optional with Lender and shall be on such terms as to amount, maturity and rate of interest as may be mutually agreeable to both Borrower and Lender. Any such advance may be made to any one of the Borrowers should there be more than one, and if so made, shall be secured by this Deed of Trust to the same extent as if made to all Borrowers. This Deed of Trust shall also secure any and all other indebtedness of Borrower due to Lender with interest thereon as specified, or of any one of the Borrowers should there be more than one, whether direct or contingent, primary or secondary, sole, joint or several, now existing or hereafter arising at any time before cancellation of this Deed of Trust. Such indebtedness may be evidenced by note, open account, overdraft, endorsement, guaranty or otherwise. Property described in this Deed of Trust will not secure future and additional advances or other such debts if you fail to give any required notice of the right of rescission with respect to the Property. Also, this Deed of Trust will not secure other debts if this security interest is in household goods and the other debt is a consumer loan. This Deed of Trust will last until it is discharged in writing.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Mississippi without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of Mississippi.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Desoto County, State of Mississippi.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Grantor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Mississippi as to all indebtedness secured by this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means THE CITIZENS NATIONAL BANK OF MERIDIAN, and its successors and assigns.

**Borrower.** The word "Borrower" means John D. Wheeler and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Grantor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq.

**DEED OF TRUST**
**(Continued)**

Loan No: 21005017904

Page 7

("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Grantor.** The word "Grantor" means John D. Wheeler.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Trustee or Lender to enforce Grantor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means THE CITIZENS NATIONAL BANK OF MERIDIAN, its successors and assigns.

**Note.** The word "Note" means the promissory note dated October 27, 2009, **in the original principal amount of $149,600.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is July 25, 2010. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**Trustee.** The word "Trustee" means Don O. Rogers, III, whose address is 512 22nd Avenue, Meridian, MS 39301 and any substitute or successor trustees.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
John D. Wheeler

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _MISSISSIPPI_ )
                                            ) SS
COUNTY OF _DESOTO_ )

Personally appeared before me, the undersigned authority in and for the said County and State, on this **27th** day of _October_ , 20 _09_ , within my jurisdiction, the within named John D. Wheeler, who acknowledged that he or she signed, executed and delivered the above and foregoing Deed of Trust for the purposes mentioned on the day and year therein mentioned.

_____
NOTARY PUBLIC

My Commission Expires: _____

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID # 3159
MARTHA C. HUGGINS
Commission Expires
Nov. 27, 2011
DESOTO COUNT

LASER PRO Lending, Ver. 5.46.00.004   Copr. Harland Financial Solutions, Inc. 1997, 2009.   All Rights Reserved.   - MS   H:\CFI\LPL\G01.FC TR-37185 PR-8

DK T BK 3,095 PG 744

"Exhibit A"

Lot 320, Fairway Pointe, located in Section 6, Township 3 South, Range 7 West, Desoto
County, Mississippi, as recorded in Plat Book 97, Page 7, in the office of the Chancery
Clerk of Desoto County, Mississippi.

# Exhibit B

**BOB LEIGH & ASSOCIATES LLC, REALTORS**

6900 Cobblestone Blvd
Southaven, MS 38672
662-890-9696 (Office)
662-890-9803 (Fax)

1576 Monteith, Suite C
Hernando, MS 38632
662-449-3530 (Office)
662-449-3531 (Fax)



**BOB LEIGH & ASSOCIATES REALTORS OF SENATOBIA**

106 North Front Street
Senatobia, MS 38668
662-562-5502 (Office)
662-562-5503 (Fax)

703 A Hwy 6 East
Batesville, MS 38606
662-563-7077 (Office)
662-563-7211 (Fax)

### CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE
### PURCHASE AGREEMENT

**IF NOT FULLY UNDERSTOOD, SEEK LEGAL ADVICE FROM YOUR ATTORNEY BEFORE SIGNING. THIS BECOMES A BINDING CONTRACT UPON ACCEPTANCE IN WRITING OF ALL PARTIES.**

For and in consideration of the mutual promises contained herein, the undersigned Seller agrees to sell, to the undersigned Buyer, and the buyer agrees to buy, the herein described property on the terms and conditions stated herein. Both buyer and seller acknowledge that Bob Leigh & Associates LLC, REALTORS Broker is the procuring cause of this sale.

Seller  JOHN WHEELER

Buyer  Jerry + Cheryl Gowen

1. **PROPERTY DESCRIPTION:** Lot 320 , Sec _____ , Subdivision Fairway Pointe ,
Part _____ , County DeSoto _____ , Mississippi, Tennessee or Arkansas and all
improvements thereon known as 921 Fairway Pointe Cove East Hernando, MS 38632
along with all fixtures including but not limited to all window and floor coverings, heating and air conditioning equipment, built-in appliances, attached mirrors, barbecue grill, lighting fixtures, ceilings fans, flowers and shrubs, curtain rods and hangers, mail box, T.V. antenna and all other items permanently attached, unless expressly excluded herein.

2. **Purchase Price & Method Of Payment:**                                    $ 187,900.00

   Payable as follows:

   A. Cash Payment at closing (Cash, Certified, or Cashiers Check)            $ 187,900.00
      subject to adjustments and prorations

   B. Buyers shall qualify for a new loan described below in the amount of $_____ for _____ years at market interest rate. FHA____VA____CONV____OTHER____ . This purchase agreement is conditioned upon buyer's ability to qualify and obtain a new loan.

   C. Seller shall owner finance for buyer $_____ amortized for _____ years at the annual interest rate of _____ , with Principal and interest payments being approximately $_____ per month. Mortgage Payment begins on _____ and continues consecutively.

   D. Buyers shall assume existing loan below with an approximate balance of $_____ Present mortgage with _____ , Loan #_____ , Int. Rate_____ % Type_____
      Approximate Monthly Note _____ . Sales price remains constant (_____), Equity Remains Constant (_____), Current Loan is qualifying (_____), Current Loan is Non-Qualifying (_____).

   E. Other _____

1

3. **PRIVACY ACT: A, PURCHASERS:** Signature of Purchasers on this contract is authorization for _____ *Rylaski* _____ (Mortgage Co.) processing a loan application for the consummation of this transaction to release to agents or brokers involved in this transaction all information requested pertaining to the status of that loan application and credit worthiness of the purchaser. B, **SELLERS:** Signature of Sellers on this contract is authorization of any mortgage secured by this property to release all information concerning that mortgage to Brokers and Agents involved in this transaction.

4. **CERTAIN COSTS Paid By:** Buyers = (B) or SELLERS = (S) as outlined below: *Seller to pay up to 3½% towards buyers Closing Cost + Pre-paids*
   Discount Points paid by _____, Not to exceed _____%, Appraisal _____, Attorney _____, Survey _____, Tax Service and/or Underwriting fee _____, Loan Origination Fee _____, Loan Transfer Fee _____, Loan Title Insurance _____, VA Funding Fee _____ -or- PM/ FHA, MIP _____ to be paid as follows - financed(_____),or to be paid in cash at closing(_____), prepaid and escrow items _____, Other Closing Cost _____. (If VA, FHA, or other government regulations require any different assessment of costs, the parties agree that such regulations shall supersede the terms of this paragraph and shall be binding upon the parties.)

5. **NEW LOAN:** Seller to pay prorated portion of Buyers note from closing until possession. The rental rate is based on the BUYERS actual new monthly payment (/) divided by 30 days (x) times the number of days from closing until possession. Rental fee is for _____ days as outlined in paragraph b below.

   Seller agrees to have rental payments withheld from proceeds of sale.

   Assumption: Seller to Pay (Month/Year) _____ and all previous payments and buyers to pay (Month/Year) _____ all subsequent payments. If possession is not given at closing _____ Buyer(s) (or) _____ Seller(s) will pay rent (in case of delayed possession) to _____ Buyer(s) (or) _____ Seller (s) at a rate of $_____ per day for _____ days, totaling $_____. This amount will be paid at closing.

6. **TAXES:** Taxes for the current year to be ✗ prorated –or- _____ assumed by Purchaser. Sellers to provide proof of Homestead Exemption filed, or pay excess taxes for current year, due to Homestead Exemption not being filed.

7. **EARNEST MONEY:** Buyer herewith tenders a deposit check $ *500.00* as earnest money which shall apply on purchase price or closing cost if buyer's offer is accepted. The sum shall be deposited with *Burch Realty Group* and if their offer is not accepted or if title requirements are not fulfilled, it shall be promptly refunded to Buyer. If after acceptance of Buyers offer, Buyer fails to fulfill his obligation after seller tenders the Deed, the earnest money shall be forfeited. In any dispute over the earnest money, the parties agree to hold the broker and agents harmless. In the event of Purchasers Default, the deposit will be equally divided between broker and seller towards their respective damages. Parties agree to indemnity and hold broker harmless of expenses incurred. The retention of deposit money shall not be considered liquidated damages and does not prevent Seller, Broker or Agents from asserting other legal rights, including specific performance of his contract, and actions for damages, which they may have because of Buyer's breach of contract. If it becomes necessary to compel the performance of the conditions of this contract, or for either party or Broker/Agent to Initiate litigation, then the losing party agrees to pay reasonable attorney's fees and court costs to the other party and the broker incurred as a result thereof. The parties recognize that the Broker/Agents have an independent action for breach by either Buyer or Seller. Buyer(s) agree to make loan application within 5 days of accepted contract and diligently pursue loan approval within the specified period of time. This purchase Agreement is contingent on Buyers loan approval, and if loan is rejected, earnest money will be refunded to buyers. Any party who wrongfully terminates this contract shall forfeit their right to earnest money funds. In the event the broker cannot determine by the contract terms which party is rightfully entitled to the earnest money, the broker shall interplead the funds if an agreement cannot be reached between buyer and seller.

*18 BS*

8. **A. CLOSING DATE:** On or before ___11_ / _15_ _2011_ . Possession shall take place on *at closing* /at *With Deed* _____ A.M./ P.M. It is the responsibility of the Buyer(s) to have all of the utilities turned on in Buyer's name on possession date in order for property inspection to be made. It is the Seller's responsibility to notify the utility companies that the property has been sold, and of a tentative turn off or reading date in order that the Buyer can arrange to have utilities set up in Buyers name by the possession date.

**B.** Closing Agency / Attorney for Buyer

**C.** Closing Agency / Attorney for Seller   *Austin Law Firm*

**D.** Title Company

9. **SELLERS ESCROW DEPOSITS,** If any, shall be current and (a) ____returned to seller, (b)____Assumed by Buyer, taxes, insurance, and mortgage insurance, prorated as of closing date. If escrow deposits are purchased by Buyer, upon audit, any escrow shortages to be paid by Seller. Buyers must contact Insurance Agent prior to Closing. The Insurability of the buyers through the existing insurance agency is strictly between buyers and insurance agency. In the event additional premium would be due, the buyer agrees to pay additional premium. If buyer can not assume sellers Homeowners insurance, buyer shall pay for their own insurance policy through the company of their choice, with information being provided to the closing attorney prior to closing. Buyer is aware that if additional homeowners' premium is due, the mortgage payment will adjust accordingly.

10. **NEW LOAN** (Amendatory Clause) Buyers and Sellers agree to complete the current Lender required Amendatory Clause Statement that upon signatures becomes a part to this sales contract. Amendatory Clause Statements require the property to appraise for at least the sales price, or the buyers may at buyers option, declare this contract void. Sellers may also declare this contract void if the appraised price is less than the sales price or the buyers are not willing to pay difference. In either case, the Buyer(s) will not forfeit their earnest money and will receive a full refund of earnest money should this contract become null and void due to a differential in appraisal price. Sellers are bound by their written sales price even if appraisal price is higher than the sales price. If there is no amendatory clause with a specific loan, property __is __is not contingent upon the appraisal value of either equaling or exceeding the agreed to purchase price. If appraisal value equals or exceeds purchase price, this contingency is satisfied. Seller is bound by written purchase price even if appraisal is higher than purchase price.

11. **SPECIAL PROVISIONS:**

*Contingent upon Sale+Closing of 782 Running Doue Coue Hernando MS Builder to do Covered Patio, Side is to be 13½ Deep by 19 wide with Brick columns, Shingle roof to match house with ceiling Fan + light+gutter. Construction to begin day after Closing. Home will be in New condition, holes patched, painted + Sub floor upstairs going into game Room is Squeaking + needs Repaired.*

12. **TITLE AND CONVEYANCE:** Conveyance shall be made to Buyers by Warranty Deed, conveying merchantable Title, subject to government regulations, recorded restrictions and easements, if any, which do not materially affect the value of the property. Previous owners could have or possibly still own some mineral rights to this property, therefore all mineral rights this seller owns are included in this sale unless otherwise specified. Should title examination reveal defect, Sellers obligate them selves to cure the same as expeditiously as possible. If defects have not been cured within 30 days of seller being informed of defects discovery, Buyers may declare this contract null and void.

13. **SURVIVAL OF CONTRACT:** All express representations, warranties, and covenants contained herein shall survive delivery of the deed except where herein specified to the contrary. All other contractual obligations shall terminate with closing.

14. **WOOD INFESTATION REPORT:** (check box) ____Purchaser _X_ Seller shall furnish and pay for, within ____ days before closing approved FHA/VA Wood Destroying Report from a licensed termite company indicating that subject property shows no evidence of termite or other wood destroying insect infestation. If such infestation exists,

3

seller shall furnish warranty of approved treatment and correct any structural damage caused by such infestation, or, if cost of said repairs are prohibitive to seller, or if purchaser deems damage unacceptable, the contract can be declared null and void and earnest money shall be refunded. Parties acknowledge that listing and selling broker(s)), lender, and attorney(s) have relied solely on the termite report at closing. In the event damage is found, the purchaser(s) release the listing and selling broker(s), lenders, and attorney(s) from any liability. By initialing below, both purchaser and seller acknowledge that the broker(s) did not recommend any pest control company, in any way warrant the inspection or treatment made by the company, and are in no way responsible for termite damage.

**Purchaser's Initials** _____  **Seller's Initials** _____

15. **SURVEY AND FLOOD CERTIFICATIONS:** Survey and flood certifications are the best way to identify boundary lines / encroachments / easements / or property in a flood zone area. It is the buyers responsibility to choose if they want or do not want a survey. Buyer agrees to hold broker and agents harmless if they choose not to get a survey and a discrepancy arises after closing of the transaction.

16. **ACCELERATION (DUE ON SALE) CLAUSES:** If the note and/or deed of trust mortgage on any existing Loan contains an acceleration (due on sale) clause; the lender may demand full payment of the entire loan balance as a result of this transfer. Both parties acknowledge that they are not relying on any representation of the other party or broker with respect to the existence or enforceability of such a provision in existing notes and/or deeds of trust or mortgages, or balloon notes or any other notes and/or deeds of trust mortgages to be executed in according with this agreement. Both parties have been advised by broker to seek legal advice from their attorneys with respect to acceleration clauses.

17. **OPTIONAL WARRANTY:** A one year buyer protection plan _____ will _____ will not be provided at the time of conveyance. Cost of $_____ to be borne by: _____ Seller _____ Buyer N/A Plan Carrier _____. Terms and details of these plans are provided by the plan carrier including the deductible amount. Compensation for this plan may be received by the _____ listing agency and agent (OR) the _____ selling agency and agent paid directly by the Plan Carrier. Seller to provide _____ 1 year builder warranty and/or _____ 2/10 warranty at seller's expense.

18. **MECHANICAL EQUIPMENT AND BUILT-IN APPLIANCES:** Seller represents that all heating and air-conditioning equipment, plumbing, electrical system, gas system, and built-in appliances are in good working order and in a good state of repair, or will be before closing or possession. Seller is responsible for condition of mechanical equipment described in this paragraph and built-in appliances until possession is given to buyer. It is the seller's responsibility to provide a key to all exterior door locks and deadbolts. It is the sellers responsibility to have all utilities turned on in order for a buyer or buyers inspector to do any and all inspections.

19. **CONDITION OF PROPERTY AND ACCEPTANCE:** The property is being purchased "as is" and "where is" with the exception of matters addressed in this paragraph and paragraph 18. Seller agrees to complete and provide to buyer a copy of SELLER'S DISCLOSURE STATEMENT, required by state law. Buyer shall give timely written notice to seller through the closing attorney or agent, of any reasonable repairs which may be needed, in order that seller shall have a reasonable opportunity to do so before closing, or without substantial delay to the closing. If the cost of making necessary repairs excluding repairs to equipment and appliances under paragraph 18, shall exceed the sum $ 500.00 , seller may void the contract, or make such repairs as are designated at seller's option. If such repairs do not exceed $ 500.00 , or buyer gives a written waiver of repairs above such figure, this contract shall remain in full force and effect. If possession is given at some date after closing, closing attorney or agent will hold the earnest money (described in paragraph 7) in escrow until possession is given and property has been inspected by buyer or buyer's designee. If and only if repairs are necessary for conditions on the property which have occurred after the closing. Seller shall be responsible for the reasonable cost of same. The earnest money shall continue to be held until such obligation is fulfilled. If the party holding the earnest money is not notified in writing of needed repairs by the end of the third business day following the possession of the property by buyer, such earnest money shall be paid to the seller. This paragraph shall, at all times, be superceded by paragraph 18, with regard to the operating condition of mechanical equipment and built-in appliances.

4

**20. DAMAGE BY FIRE, ETC.**: This contract is further conditioned upon delivery of the improvements in their present condition and in the event of material damage by fire or otherwise, before closing, buyer may declare the contract void and shall be entitled to the return of his earnest money, or buyer may elect to complete the transaction in accordance with this contract provided the property is restored by seller at seller's expense prior to closing of the sale.

**21. RESPONSIBILITY OF BROKER**: No agent or representative of broker shall have any power to make any representations as to the property or any statement, unless and except fully embodied herein in writing. This contract shall impose no obligations on broker to perform any act or thing other than herein set forth.  Broker assumes no responsibility for the performance of this contract by either party, or for the condition of the subject property.

**22. AGREEMENT OF PARTIES**: This contract incorporates all prior agreements between the parties, contains the entire and final agreement of the parties, and cannot be changed except by their written consent. Neither party has relied upon any statement or representation made by the other party or the sales representative/broker bringing the parties together. Neither party shall be bound by any terms, conditions, oral statements, warranties, or representations not herein contained. Each party acknowledges that he has read and understands this contract. The provisions of this contract shall apply to end bind the heirs, executors, administrators, successors, and assigns of the respective parties hereto. When herein used, the singular includes the plural and the masculine includes the feminine as the context may require.

**23. PROFESSIONAL FEES AND REPRESENTATION**: It is hereby agreed and understood that the following state the representatives of all parties concerned:

The listing agency/broker represents the interest of the _X_ Seller _____ Buyer _____ both Seller and Buyer.
The selling agency/broker represents the interest of the _____ Seller _X_ Buyer _____ Both the seller and the buyer.

**The professional fees will be paid as follows:**

_3_ % of the sales price will be paid to ~~Bob~~ Leigh + Assoc _____ by the _X_ Seller _____ Buyer.

_3_ % of the sales price will be paid to _Burch Realty Group_ _____ by the _X_ Seller _____ Buyer.

In the event of default, the defaulting party may be held liable to broker(s) for damages, including commission and expenses. In the event the broker(s) prevails in a legal action to collect said damages, the defaulting party shall be additionally liable to broker(s) for reasonable cost of broker's attorney fees. This agreement shall not limit the rights of broker provided for in any listing or other agreement which may be in effect between seller and broker except that the total amount of commission collected shall be specified as above.

**24. DISCLOSURE TO PURCHASER**: The undersigned broker and all salespersons affiliated with undersigned broker (and the listing broker and all salespersons affiliated with the listing broker, in the event the cooperative or seller broker and listing broker are not the same) are agents to their prospective parties as outlined in paragraph 23 above. If the purchaser does not have representation and considers it necessary, the purchaser can obtain agency representation of a lawyer or a real estate broker or both. Buyer hereby acknowledges receipt of a duplicate original hereof.

**25. EQUAL HOUSING OPPORTUNITY**: We do business in accordance with the Federal Fair Housing Law (Section 809, Title VIII). It is illegal to discriminate against any person because of race, color, religion, sex, handicap, familial status or national origin in the sale or rental housing or residential lots, in advertising the sale or rental of housing or residential lots, in advertising the sale or rental of housing, in the financing of housing, in the provision of real estate brokerage services, or in blockbusting.

**26. LEAD-BASED PAINT**: Parties are aware the age of this property might make it suspect that "Lead Based Paint" might have been used in accordance with "HUD" and "EPA" final rulings as set forth in 61 Federal Regulation 9064 (March 6, 1996) and in compliance with Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of

5

1992 (Title X of the Housing and Community Development Act of 1992, P.L. 102-550), the seller does give notice to the purchaser that purchaser has ten (10) days to conduct the Risk Assessment of Inspection as provided therein and has provided all available records or reports pertaining thereto. Purchaser, by initialing below, acknowledges receipt of the "Lead Based Paint" pamphlet required by HUD and EPA.

**Purchaser's Initials** _____ _____

27. **ATTACHMENTS**:

| | | | |
|---|---|---|---|
| Seller Disclosure *New construction* ___Yes _X_No | | Right of Refusal ___Yes ___No |
| Inspection Addendum _X_Yes ___No | | Owner Finance Addendum ___Yes _X_No |
| Agency Disclosure _X_Yes ___No | | Lead Based Paint Disclosure ___Yes _X_No |
| Dual Agency Confirmation ___Yes _X_No | | Possession Agreement ___Yes _X_No |
| Broker/Owner Disclosure ___Yes _X_No | | Other_____ ___Yes _X_No |
| Mandatory Arbitration Agreement _X_Yes ___No | | FHA Addendum ___Yes _X_No |
| Property Issues Addendum _X_Yes ___No | | |

28. **ADDENDUM**: Attached addendum consisting of ___4___ exhibits numbering ___6___ pages are part of this agreement and are incorporated herein by the reference.

Offer made this _13_ day of _October_, 2011
City _Hernando_, State _MS_, Time _6:00_ A.M./P.M.

This offer expires on _10/18/2011_. Time _6:00_ A.M./P.M.

Buyer _____     Buyer _Cheryl O. Gowen_

Offer accepted this _19_ day of _OCTOBER_, 2011
City _SOUTHAVEN_, State _MS_, Time _4:30_ A.M./P.M.

Counteroffer expires on ___/___/___ Time _____A.M./P.M.

Seller _____     Seller _____

Subject to clearance of any check, broker acknowledges receipt of the above mentioned earnest money and holds same in trust subject to the terms of this contract.

_Bob Leigh + assoc_
Selling Agency and Broker

_Barbara Stacks_
Selling Agent

_KARLIN REALTY GROUP_
Listing Agency and Broker

_KAY PATTERSON_
Listing Agent

## HOME INSPECTION ADDENDUM

This form is provided as a courtesy to the parties only. It is not required to be used in this transaction and may not fit the needs, goals and purposes of the parties. The Mississippi Association of REALTORS® makes no statement or warranty as to this form, its contents or use, and the parties, by their use of this form, acknowledge said facts and agree that neither the Mississippi Association of REALTORS® nor any member thereof shall be liable to any party or person for its contents or use. If any party to this transaction does not fully understand it, or has any question, the party should seek advice from a competent legal professional before signing.

1  This Addendum is attached to and made part of the Contract dated ___10/13/2011___ between

2  ___JOHN WHEELER___ (Seller(s)) and

3  ___Jerry + Cheryl Gowen___ (Buyer(s)), for the

4  Property located at: ___921 Fairway Pointe Cove East___ ("Property")

5  ___Hernando, Ms 38632___

6  (Address or Description per Contract)

7  Insofar as parties intend for suitable inspection(s) of the Property to be a contingency for performance of the Contract, the following
8  provisions apply:

9  1.  Buyer(s) shall, at its expense, arrange for a Home Inspection to be conducted and a written request for repairs delivered
10     Seller(s) or Seller(s)' agent within ___10___ calendar days after effective date of the Contract, as to the improvements
11     upon the Property, such inspection to be completed by a Mississippi licensed home inspector. Buyer(s), or any designee, and
12     Buyer's home inspector shall have the right to enter upon the property at reasonable hours, with twenty-four (24) hours prior
13     notice, and conduct one or more inspections of the physical condition of the Property and improvements.

14  2.  On the designated inspection date(s), Seller, having received proper notice from the Buyer, shall provide immediate access
15     to the Property, and shall see that all utilities are on at the time of the inspection. In the event of failure of the Seller to make
16     proper provision for the inspection, Seller shall be responsible for any loss or expense incurred by Buyer as a result of a
17     failed or partial inspection, including cost of secondary or supplemental inspections caused by Seller's failure to facilitate the
18     inspection.

19  3.  If deficiencies are revealed by the Home Inspection Report that have not been previously disclosed, Buyer may:
20     (a) identify such deficiencies in writing to Seller, along with a copy of the Home Inspection Report to the Seller. Seller will
21     have three (3) days to consent in writing to correct deficiencies on Buyer's list, in an amount not to exceed
22     $ ___500.00___. Should correction of deficiencies cost more than the predetermined expense limitation, Seller(s)
23     may elect to correct the deficiencies and proceed with the Contract; OR Buyer may
24     (b) accept responsibility for correction of deficiencies and proceed to Closing if Seller(s) elects not to correct deficiencies
25     in excess of the expense limitation; OR Buyer may
26     (c) cancel the contract, citing the deficiencies in writing that underlie Buyer(s)' cancellation, whereupon all earnest money
27     deposits shall be returned to Buyer(s).
28     NOTE: The provision of a Home Inspection Report by Buyer(s) to Seller(s) under paragraph (a) above does not, in any case,
29     constitute transfer of ownership of such report to Seller(s) or signify permission to make use of the report for purposes other
30     than those set forth in paragraphs (a) , (b) and (c).

31  4.  Buyer has the right to perform a final walk-through inspection prior to Closing to verify that the terms of the Contract have
32     been fulfilled.

34  _____  __10-13-11__  _____
35  Buyer                           Date          Seller                          Date

37  ___Cheryl O. Gowen___  __10-13-11__  _____
38  Buyer                           Date          Seller                          Date

NOTE: This form is provided by MAR to its members for their use in real estate transactions and is to be used as is. By using this form, you agree and covenant not to alter, amend, or edit said form or its content, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. These forms are provided with the understanding that the publisher does not engage in rendering legal, accounting, or other professional services.

Page 1 of 1

Copyright© 2008 by Mississippi Association of REALTORS®
F7 - Home Inspection Addendum
Rev. Date 1/2008

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035   www.zipform.com

## MANDATORY ARBITRATION ADDENDUM
### Brokers and Agents

1  This Addendum is attached to and made part of the Contract dated **10/13/2011**

2  Between Seller(s) _John Whitecar_

3  and Buyer(s) _Jerry + Cheryl Bowen_

4  for Property located at:

5  _921 Fairway Pointe Cove East Hernando, MS 38632_

6

7  (Address or Description per Contract)

8  Insofar as the parties intend to provide for mandatory arbitration in relation to Contract for the Sale and

9  Purchase of Real Estate executed by them on the date herewith ("the Contract), the following provisions apply:

10  For and in consideration of the entry by Seller and Buyer into the Contract, and in further consideration of the

11  terms and covenants of this agreement, and other valuable consideration, the receipt of which is acknowledged,

12  the parties acknowledge, understand and agree, by these presents, in addition to all other terms and conditions

13  set for the Contract as follows:

14  1.  **Matters to be Submitted to Arbitration**

15  All disputes and controversies of every kind and nature arising out of and in connection with the real estate

16  transaction as against the Listing Broker, the Selling Broker (if any) and/or their agents or representatives shall

17  be submitted to arbitration pursuant to the procedure set forth in this agreement.

18  2.  **Procedure and Venue**

19  Matters to be arbitrated under this agreement shall be resolved by arbitration administered by the American

20  Arbitration Association in accordance with its arbitration rules, policies and procedures, and in accordance with

21  applicable provisions of Mississippi law, including Miss. Code Annotated, Section 11-51-1 *et seq.*  Venue of

22  the proceeding shall be in the county in which the land is located, unless the parties agree in writing otherwise.

23  3.  **Agreement as Bar to Litigation.** The provisions of this agreement shall be complete defense to any suit,

24  action, or proceeding instituted in any federal, state, or local court or before any administrative tribunal with

25  respect to any controversy or dispute arising during the period of this agreement and which is arbitrable as set

26  forth in this agreement.  The arbitration provisions of this agreement shall, with respect to such controversy or

27  dispute, survive the termination or expiration of the Contract.

28  4.  **Modification of Agreement by Arbitrators**

29  Nothing contained in this agreement shall be deemed to give the arbitrators any authority, power, or right to

30  alter, change, amend, modify, add to, or subtract from any of the provisions of the Contract.

31  5.  **Governing Law**

32  It is agreed that this agreement shall be governed by, construed, and enforced in accordance with the laws of

33  the State of Mississippi.

34  6.  **Entire Agreement**

35  This agreement constitutes the entire agreement between the parties and any prior understanding or

36  representation of any kind preceding the date of this agreement shall not be binding upon either party except to

37  the extent incorporated in this agreement.

Copyright ©2007 by Mississippi Association of REALTORS®                                      Rev. Date 1/2007
F28 - Mandatory Arbitration Addendum

Phone:              Fax:
Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

38 **7.  Modification of Agreement by Parties**
39 Any modification of this agreement or additional obligation assumed by either party in connection with this
40 agreement shall be binding only if evidenced in writing signed by each party or an authorized representation of
41 each party.

42 **8.  Notices**
43 Any notices provided for or concerning this agreement shall be in writing and be deemed sufficiently given
44 when sent by certified or registered mail and if sent to the respective address of each party as set forth at the
45 beginning of this agreement.

46 **9.  Paragraph Headings**
47 The titles to the paragraphs of this agreement are solely for the convenience of the parties and shall not be used
48 to explain, modify, simplify, or aid in the interpretation of the provisions of this agreement.

49 In witness, each party to this agreement has caused it to be executed on the date indicated below, the same to
50 constitute a separate agreement between them, and the same to be incorporated into and be part of the Contract.

51 _____          _____
52 Seller(s)

53 _____          *Cheryl O. Gowen*
54 Buyer(s)

55 *Bob Leigh + Assoc*          *BARCH REALTY GROUP*
56 Listing Broker (if any)          Selling Broker (if any)
                                        *LISTING*

Copyright ©2007 by Mississippi Association of REALTORS®          Rev. Date 1/2007
F28 – Mandatory Arbitration Addendum

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035 www.zipform.com

## PROPERTY ISSUES ADDENDUM

This is a legally binding document. If not understood, consult an attorney.
This form is not mandated by the Mississippi Real Estate Commission.

1  THIS PROPERTY CHECKLIST is provided by *Bob Leigh + Assoc* (the "Company")

2  Including *Barbara Stacks* (the "Agent") to _____

3  *Jerry + Cheryl Gowen* (the "Buyer") in connection

4  with the purchase of any property, including (if known) the property located at:

5  *921 Friviay Pointe Cove, Hernando, MS.* (the "property").

6  THE COMPANY AND ALL AGENTS AFFILIATED WITH THE COMPANY ARE TRAINED IN THE MARKETING OF REAL ESTATE. THEY
7  ARE NOT TRAINED OR LICENSED TO PROVIDE THE BUYER WITH PROFESSIONAL ADVICE REGARDING THE PHYSICAL CONDITION
8  OF ANY PROPERTY OR REGARDING LEGAL OR TAX MATTERS. ACCORDINGLY, NEITHER THE COMPANY NOR THE AGENTS
9  AFFILIATED WITH THE COMPANY WILL MAKE ANY REPRESENTATIONS OR WARRANTIES REGARDING THE PHYSICAL OR LEGAL
10  CONDITION OF ANY PROPERTY SELECTED BY BUYER.

11  AS PART OF ANY WRITTEN OFFER TO PURCHASE A PROPERTY, THE BUYER SHOULD CONSIDER EXERCISING THE OPTION TO
12  USE THE SERVICES OF APPROPRIATE PROFESSIONALS TO CONDUCT INSPECTIONS, INVESTIGATIONS, TESTS, SURVEYS, AND
13  OTHER EVALUATIONS OF THE PROPERTY AT THE BUYER'S EXPENSE. THE BUYER IS ADVISED TO EXERCISE THIS RIGHT. IF THE
14  BUYER FAILS TO DO SO, THE BUYER IS ACTING CONTRARY TO THE ADVICE OF THE COMPANY.

15  THE FOLLOWING IS A GENERAL LISTING OF ISSUES THAT THE BUYER SHOULD CONSIDER IN EVALUATING ANY PROPERTY. THIS
16  IS NOT INTENDED TO BE A COMPREHENSIVE LIST OF ALL ISSUES THAT MAY BE RELEVANT IN THE BUYER'S EVALUATION OF A
17  SPECIFIC PROPERTY, INCLUDING ANY PROPERTY LISTED ABOVE. THIS DOCUMENT IS, HOWEVER, INTENDED TO DIRECT THE
18  BUYER'S ATTENTION TO A NUMBER OF ISSUES THAT ARE COMMONLY CONSIDERED IMPORTANT IN THE EVALUATION OF ANY
19  PROPERTY.

20  1. BUILDING CODE / ZONING COMPLIANCE: Buyer is advised to consult with local zoning officials to assure that Buyer's intended use of the
21  property complies with local zoning requirements and with any recorded restrictive covenants and conditions. Buyer acknowledges that the
22  Company should not be relied upon for any determination as to any past or present building or zoning violations, or as to the suitability of the
23  property for Buyer's intended use.

24  2. HAZARDOUS WASTE AND TOXIC SUBSTANCES: Buyer is advised to consult with appropriate professionals regarding the possible
25  existence of hazardous wastes and toxic substances on the property, including, but not limited to, asbestos, mold, radon gas, and lead based
26  paint. Buyer is further advised that a variety of federal laws can place strict liability on property owners for hazardous waste management and
27  cleanup of hazardous substances. Buyer is advised of Buyer's obligation to make appropriate inquiries ("due diligence") into past uses of the
28  property to ascertain the possible existence of toxic substances. Buyer acknowledges that the Company should not be relied upon for any
29  determination as to the existence of any toxic substances.

30  3. SURVEYING AND STAKING: Buyer is advised that without an accurate survey of the property, Buyer cannot be certain as to the exact
31  boundaries of the property, or that any improvements on the property are not encroaching upon adjoining parcels of property, or that
32  improvements located on adjoining parcels of property do not encroach on the property. Buyer acknowledges that the Company should not be
33  relied upon for any determination as to the boundaries of the property or of any encroachments within or over the actual boundaries of the
34  property.

35  4. HOME PROTECTION PLAN: Buyer acknowledges that Buyer has been advised by the Company of the availability of Home Protection Plans
36  which provide limited protection for certain home appliances and certain components of the property after Closing.

37  5. PROPERTY AND CASUALTY INSURANCE: The availability and cost of homeowners property insurance depends on a number of factors,
38  including your personal insurance, financial and credit history, materials and conditions present in or on the Property, and the claims history on
39  the property. Some insurance companies base part of their underwriting decision on Loss History Reports that show the history of insurance

[ JG   CG ] Buyer's Initials  Date  10/13/11

Copyright ©2006 by Mississippi Association of REALTORS®      Page 1 of 2
F27 - Property Issues Addendum                                                    Rev. Date 3/2006

**R**
REALTOR®

40  claims or property losses concerning the property or made by you concerning other properties. At the time you close on the purchase of your real
41  property, most insurance companies will only issue a binder to you. A binder is NOT an insurance policy, it is only a temporary commitment to
42  provide insurance coverage. From the effective date of the binder the insurance company has 90 days to review the insurance application and
43  other information and determine whether it will issue an insurance policy on the terms set forth in the binder. You are advised to consult directly
44  with insurance companies of your choice regarding the availability and costs of insurance coverage for the property. Further, if the property is
45  located in a flood zone, the mortgage lender may require that you obtain and pay for flood insurance on the property and its improvements.

46  **6. TITLE ISSUES/HOMEOWNER'S ASSOCIATION:** Buyer is advised to carefully review with legal counsel the contents of: (a) any Commitment
47  for Title Insurance on the Property; and (b) all documents affecting the Property which are a matter of public record, including, but not limited to,
48  any restrictive covenants related to the development in which the Property is located. If the Property is part of a Condominium Association or
49  other Homeowners Association, Buyer is advised to consult directly with the Association regarding all Association matters that may affect the
50  Property, including, but not limited to, existing and proposed budgets, financial statements, present and proposed assessments, dues, fees,
51  rules, and meeting minutes.

52  **7. PHYSICAL CONDITION:** Buyer is advised to consult with appropriate professionals regarding all physical aspects of the property, including,
53  but not limited to, built-in appliances, plumbing, heating, air conditioning, electrical systems, foundation, roof, structure, pool/spa systems and
54  components, and any personal property included in the sale.

55  **8. SQUARE FOOTAGE / ACREAGE:** Buyer is advised to consult with appropriate professionals regarding the square footage, room dimensions,
56  lot size, and age of property improvements. ANY NUMERICAL STATEMENTS BY THE COMPANY REGARDING THESE ITEMS ARE
57  APPROXIMATIONS ONLY AND SHOULD NOT BE RELIED UPON.

58  **9. SEWER SYSTEM:** Buyer is advised to consult with appropriate professionals regarding sewer and septic systems and components. The
59  property may not be connected to a public sewer, and applicable fees may not have been paid. Septic tanks may need to be pumped. Leach
60  fields may need to be inspected.

61  **10. WATER & UTILITY AVAILABILITY:** Buyer is advised to consult with appropriate professionals regarding the source and availability of water
62  and other utility services, any applicable use restrictions, and ownership of water rights and water system. The property may not be connected to
63  a public water system. A well and well system may require inspection.

64  **11. GEOLOGIC CONDITIONS:** Buyer is advised to consult with appropriate professionals regarding possible geologic conditions at or near the
65  property. Such geologic conditions may include, but are not limited to, soil and terrain stability, the existence of wetlands, and drainage problems.

66  **12. FEDERAL FAIR HOUSING COMPLIANCE:** Buyer is advised to consult with appropriate professionals regarding neighborhood or property
67  conditions including, but not limited to: schools; proximity and adequacy of law enforcement; proximity to commercial, industrial, or agricultural
68  activities; crime statistics, fire protection; other governmental services; existing and proposed transportation; construction and development;
69  noise or odor from any source; and other nuisances, hazards, or circumstances. All properties will be shown without regard to race, color,
70  religion, sex, national origin, handicap or familial status and any other current requirements of federal fair housing laws.

71  **13. TAX/LEGAL CONSEQUENCES:** Buyer is advised that this transaction has tax and legal consequences for the Buyer. The Buyer is advised
72  to consult with appropriate legal and tax advisors regarding this transaction.

73                              RECEIPT AND ACKNOWLEDGEMENT OF BUYER

74  I agree to hold _____Bob Leigh & Assoc_____ harmless from any liability with regard to the above issues.
75                              (company)

76  I carefully reviewed this Property Checklist. I understand my right and the recommendation of the Company to consult with appropriate experts
77  and professionals prior to, or as part of an offer to purchase any property.

78  I FURTHER UNDERSTAND THAT I HAVE THE RIGHT TO INCLUDE ANY OR ALL OF THE ABOVE ISSUES AS A CONDITION OF MY
79  OFFER TO PURCHASE ANY PROPERTY.

80  Buyer Signature _____    Date  10-13-11

81  Buyer Signature _____Cherry O. Gowen_____    Date  10-13-11

Copyright ©2006 by Mississippi Association of REALTORS®    Page 2 of 2
F27 - Property Issues Addendum                                                Rev. Date 3/2006

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035  www.zipform.com

Approved by:
MS Real Estate Comm.
P.O. Box 12685
Jackson, MS 39236-2685

# WORKING WITH A REAL ESTATE BROKER
[This is Not A Binding Contract]

### GENERAL

Before you begin working with any real estate agent, you should know who the agent represents in the transaction. Mississippi real estate licensees are required to disclose which party they represent in a transaction and to allow a party the right to choose or refuse among the various agency relationships.

There are several types of relationships that are possible and you should understand these at the time a broker or salesperson provides specific assistance to you in a real estate transaction.

The purpose of the Agency Disclosure is to document an acknowledgement that the consumer has been informed of various agency relationships which are available in a real estate transaction.

For the purpose of this disclosure, the term seller and/or buyer will also include those other acts specified in Section 23-35-35(1), of the Miss. Code., "...list, sell, purchase, exchange, rent, lease, manage, or auction any real estate, or the improvements thereon including options"

### SELLER'S AGENT

A seller can enter into a "listing agreement" with a real estate firm authorizing the firm and its agent(s) to represent the seller in finding a buyer for his property. A licensee who is engaged by and acts as the agent of the Seller only is known as a Seller's Agent. A Seller's agent has the following duties and obligations:

To the Seller:
- The fiduciary duties of loyalty, confidentiality, obedience, disclosure, full accounting and the duty to use skill, care and diligence.

To the Buyer:
- A duty of honesty and fair dealing.
- A duty to disclose all facts known to the Seller's agent materially affecting the value of the property which are not known to, or readily observable by, the parties in a transaction.

### BUYER'S AGENT

A buyer may contract with an agent or firm to represent him/her. A licensee who is engaged by and acts as the agent of the Buyer only is known as the Buyer's Agent.

If a Buyer wants an agent to represent him in purchasing a property, the buyer can enter into a Buyer's Agency Agreement with the agent. A Buyer's Agent has the following duties and obligations:

To the Buyer:
- The fiduciary duties of loyalty, confidentiality, obedience, disclosure, full accounting and the duty to use skill, care and diligence.

To the Seller and Buyer:
- A duty of honesty and fair dealing.

### DISCLOSED DUAL AGENT

A real estate agent or firm may represent more than one party in the same transaction. A Disclosed Dual Agent is a licensee who, with the informed written consent of the Seller and Buyer is engaged as an agent for both Seller and Buyer.

As a disclosed dual agent, the licensee shall not represent the interests of one party to the exclusion or detriment of the interests of the other party. A disclosed dual agent has all the fiduciary duties to the Seller and Buyer that a Seller's or Buyer's agent has except the duties of full disclosure and undivided loyalty.

A Disclosed dual agent may not disclose:
- (a) To the Buyer that the Seller will accept less than the asking or listed price, unless otherwise instructed in writing by the Seller.
- (b) To the Seller that the Buyer will pay a price greater than the price submitted in a written offer to the Seller, unless otherwise instructed in writing by the Buyer.
- (c) The motivation of any party for selling, buying, or leasing a property, unless otherwise instructed in writing by the party, or
- (d) That a Seller or Buyer will agree to financing terms other than those offered, unless otherwise instructed in writing by the respective party.

### IMPORTANT NOTICE!

"Customer" shall mean that person not represented in a real estate transaction. It may be the buyer, seller, landlord or tenant. A Buyer may decide to work with a firm that is acting for the Seller (a Seller's Agent or otherwise). If a Buyer does not enter into a Buyer Agency Agreement with the firm that shows that properties, that firm and its agents may show the buyer properties as an agent or subagent working on the seller's behalf. Such a firm represents the Seller, (not the Buyer) and must disclose that fact to the Buyer.

When it comes to the price and terms of an offer, the Seller's Agent will ask you to decide how much to offer for any property and upon what terms and conditions. They can explain your options to you, but the final decision is yours, or they cannot give you legal or financial advice.

The Seller's Agent will present to the Seller any written offer that you ask him to present. You should keep to yourself any information that you do not want the Seller to know (i.e. the price you are willing to pay, other terms you are willing to accept, and your motivation for buying). The Seller's agent is required to tell all such information to the Seller. You should not furnish the Seller's agent anything you do not want the Seller to know. If you desire, you may obtain the representation of an attorney or another real estate agent, or both.

---

**THIS IS NOT A CONTRACT. IT IS AN ACKNOWLEDGEMENT OF DISCLOSURE.**

The below named Licensee has informed me that brokerage services are being provided to me as:

[ ] Client    (Seller's or Landlord's Agent)
[ ] Client    (Buyer's or Tenant's Agent)      [ ] Customer    (Not as my Agent)
[ ] Client    (Disclosed Dual Agent)

By signing below, I acknowledge that I received this informative document and explanation prior to the exchange of confidential information which might affect the bargaining position in a real estate transaction favoring me.          9/14/2011
                                                                                                    (Date)

_____        _____        _____
(Client)                       (Licensee)                 (Customer)

_____        _____        _____
(Client)                       (Company)                  (Customer)

LICENSEE - Provide a copy of disclosure acknowledgement to all parties and retain signed original for your files.

90 Page 1 of 1  2/2005

## Exhibit C

### AGREEMENT

Whereas, John D. Wheeler has entered into a contract to sell a house on lot 320 Fairway Pointe subdivision in Hernando, Mississippi, to Jerry and Cheryl Gowen, and

Whereas, that contract calls for certain repairs and additions to be made to said house prior to closing, and

Now, therefore, it is agreed by and between John D. Wheeler and Wheeler Homes, LLC that Wheeler Homes, LLC will do all required repairs and additions to said house and will provide the buyer with a Builder's warranty covering all of the construction of said house including a HBW 2-10 Home Buyer's Warranty at closing. The HBW warranty shall be paid for out of the closing proceeds and shown on the HUD-1 settlement statement which is the standard procedure in the industry. For performing the necessary repairs and additions, Wheeler Homes, LLC shall be paid its actual direct cost plus 15% of said itemized cost to cover indirect costs, overhead, supervision and profit. Wheeler Homes, LLC shall furnish copies of all material and subcontractor invoices to substantiate the amount of the direct costs incurred. For the purposes of this agreement direct costs shall include materials and labor actually provided to the specific property and shall not include any allowance for insurance, overhead, supervision etc. since it is the intent of this agreement that all indirect costs will be covered by the 15% fee.

Witness our signatures this the 19th day of October, 2011.

Wheeler Homes, LLC
By: Carmen Wheeler, Member

John D. Wheeler